*12*

FILED

OCT 2 4 2014

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF CALIFORNIA

TJOF

POSTED ON WEBSITE

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF CALIFORNIA
FRESNO DIVISION

In re                                    )        Case No.  14-11447-B-7
                                         )
James B. Willingham and                  )        DC No. UST-1
Pamela L. Willingham,                    )
                                         )
          Debtors.                       )
_____)

### MEMORANDUM DECISION REGARDING UNITED STATES TRUSTEE'S MOTION TO DISMISS

Gregory S. Powell, Esq., appeared on behalf of Tracy Hope Davis, Esq., United States Trustee.

Cynthia R. Scully, Esq., appeared on behalf of the debtors, James B. Willingham and Pamela L. Willingham.

The Ninth Circuit Bankruptcy Appellate Panel ("BAP") recently decided that the $200 "older-vehicle operating expense" deduction is not available to chapter 13 debtors for the purpose of determining the amount of disposable income which must be paid through a chapter 13 plan to unsecured creditors pursuant to 11 U.S.C. § 1325(b)(2).[1] *In re Luedtke*, 508 B.R. 408 (9th Cir. BAP 2014).  In this contested matter, the court must decide whether chapter 7 debtors may still claim the older-vehicle expense deduction in the calculation of monthly disposable income on their chapter 7 means test for the purposes of determining the "presumption of abuse" issue under § 707(b)(2).

_____

[1]Unless otherwise indicated, all chapter, section and rule references are to the Bankruptcy Code, 11 U.S.C. §§ 101-1330, and to the Federal Rules of Bankruptcy Procedure, Rules 1001-9036, as enacted and promulgated *after* October 17, 2005, the effective date of The Bankruptcy Abuse Prevention and Consumer Protection Act of 2005, Pub. L. 109-8, Apr. 20, 2005, 119 Stat. 23 (hereafter "BAPCPA").

The U.S. Trustee (the "UST") has moved to dismiss this case as a "presumed abuse" of chapter 7 pursuant to § 707(b)(2). In the alternative, the UST asks that the case be dismissed pursuant to § 707(b)(3) based on the "totality of the circumstances" because the debtors, James and Pamela Willingham (the "Debtors"), appear to have sufficient disposable income to repay all or a substantial portion of their debts through a chapter 13 plan (the "Motion").

The Debtors filed an opposition to the Motion and this matter was originally set for hearing on the court's law and motion calendar. Prior to the hearing, the court issued a civil minute order directing the parties to brief the *Luedtke* older-vehicle expense issue which the UST had noted in a footnote to her Motion. The Debtors filed a supplemental opposition after which the court deemed the matter suitable for a decision without oral argument and it was taken under submission.

For the reasons set forth below, the court can find no legal or logical reason why chapter 7 debtors should still be entitled to deduct a $200 older-vehicle operating expense if it is not also available to chapter 13 debtors. In the absence of the older-vehicle expense deduction, the Debtors' disposable income increases to a level which presumptively makes this case an abuse of chapter 7. That presumption has not been rebutted and it further appears that the Debtors could pay all or most of their debts through a chapter 13 plan. The Debtors will have 14 days to convert their case to chapter 13. If the case is not converted in that time, the Motion will be granted and the case will be dismissed.

This memorandum decision contains the court's findings of fact and conclusions of law required by Federal Rule of Civil Procedure 52(a), made applicable to this contested matter by Federal Rules of Bankruptcy Procedure 7052 and 9014(c). The court has jurisdiction over this matter pursuant to 28 U.S.C. § 1334, 11 U.S.C. § 707, and General Orders 182 and 330 of the U.S. District Court for the Eastern District of California. This is a core proceeding as defined in 28 U.S.C. § 157(b)(2)(A).

///

2

**Findings of Fact.**

The Debtors are individuals with primarily consumer debts. Their schedules reveal unsecured debts totaling $30,421, all of which appear to relate to credit cards and charge accounts for consumer goods. Their secured debts total $401,982, of which approximately $356,001 relates to a mortgage against their home located in Bakersfield, California. The Debtors filed a Statement of Intention with their bankruptcy schedules which declares that they intend to keep the home. The Debtors have two automobiles, a 2003 Ford Mustang with 100,000 miles valued at $6,956, and a 2006 Ford F250 pickup with 80,000 miles valued at $15,776. There are no liens against the two vehicles. The only other secured debt, with a lien against a 2007 Toy Hauler (the "Toy Hauler"), is owed to Santander Consumer USA. The Debtors' Statement of Intention indicates that the Debtors intend to surrender the Toy Hauler and discontinue making those loan payments. The Debtors have no dependents and show a household size of two on Schedule J.

Individual chapter 7 debtors, whose debts are primarily consumer debts, are required under BAPCPA to file a Chapter 7 Statement of Current Monthly Income and Means-Test Calculation using approved Official Form B22A ("Form B22A" or the "Means Test"). The function of the Means Test is to determine the chapter 7 debtor's disposable income and to estimate the ability of debtors to repay their debts. Chapter 7 debtors whose annualized income exceeds the applicable median family income in their state of residence must "pass" the Means Test without creating a presumption of abuse (discussed below). In California, the median family income for a household of two is $62,009. The Debtors' combined current monthly income ("CMI") as stated in their Form B22A is $8,549.16. Here, the Debtors' annualized income (CMI x 12) is $102,589.92. The Debtors were therefore required to complete the entire Means Test for purposes of making the 60-month disposable income calculation required by § 707(b)(2).

On the Means Test, the Debtors claimed a number of expense deductions which are undisputed and not at issue here. However, with regard to the vehicles, they claimed a

1  $472 "vehicle operation" expense as allowed by the IRS Local Standards (Line 22A).  In

2  addition, they deducted $200 for each of their two vehicles under the category of "IRS

3  Transportation Standards, Ownership Costs" (Lines 23 & 24).  On Line 42(a), under the

4  category "Future payments on secured claims," the Debtors also deducted an "Average

5  Monthly Payment" for the Toy Hauler loan in the amount of $915.91.  Altogether, the

6  Debtors claim deductions from their monthly income totaling $8,457.72 (Line 47).  After

7  taking all of the deductions, the Debtors report a monthly disposable income under

8  § 707(b)(2) in the amount of $91.44 (Line 50).  If all of the above-referenced deductions

9  are allowed, the Debtors would "pass" the Means Test.

10  **Issues Presented.**

11       In calculating their 60-month disposable income, the Debtors claimed a deduction

12  for the Toy Hauler loan payments even though they intend to surrender the Toy Hauler

13  and stop making those payments.  The UST objects to this deduction.  The UST also

14  notes, in a footnote, that the Debtors deducted $400 of "Ownership Costs" for their 2003

15  and 2006 vehicles.  The UST contends that the Debtors' case is presumed to be an abuse

16  of chapter 7 because the above-median-income Debtors' 60-month disposable income,

17  without the disputed expense deductions, exceeds the $12,475, "presumption of abuse"

18  threshold under § 707(b)(2)(A)(i)(II).  Alternatively, the UST contends that "the totality

19  of the circumstances of the [Debtors'] financial situation demonstrates abuse" because,

20  without the disputed deductions, the Debtors have the apparent ability to repay all, or a

21  substantial portion of their debts through a chapter 13 plan.  § 707(b)(3)(B).

22       Without the $200 older-vehicle deductions, this case is presumptively an abuse of

23  chapter 7 regardless of how the Debtors are allowed to treat the Toy Hauler loan

24  payments.  Accordingly, this decision focuses first on the older-vehicle operating expense

25  deductions and application of the BAP's *Luedtke* decision.  The court will then consider

26  the "totality of the circumstances" argument.

27  / / /

28  / / /

4

1  **Analysis and Conclusions of Law.**

2       **Overview of 11 U.S.C. § 707(b) and The IRS Standards.**  The chapter 7 case of

3  an individual debtor whose debts are primarily consumer debts may be dismissed under

4  § 707(b)(1) if the court finds, after notice and a hearing, that the granting of a discharge

5  would be an abuse of chapter 7.  BAPCPA offers two standards for determining the

6  "abuse" issue.  Abuse may be presumed under the objective Means Test prescribed in

7  § 707(b)(2)(A)(i).  If the debtor's annualized income exceeds the applicable median

8  family income, and the means test shows that the debtor has the ability to repay a

9  minimum amount of his or her debts over a period of 60 months, then a presumption of

10  chapter 7 abuse arises.[2]

11       Section 707(b)(3) prescribes a more subjective test for abuse based on the "totality

12  of the circumstances."[3]  Unlike the Means Test, the Bankruptcy Code does not define

13  "totality of the circumstances."  Prior to BAPCPA, the Ninth Circuit looked to the

14  "totality of the circumstances" to interpret the term "substantial abuse" in former

15

16

17  _____

18       [2]Section 707(b)(2)(A)(i) states in pertinent part:

19
     [T]he court shall presume abuse exists if the debtor's current monthly income reduced by
20   the [allowed deductions] . . . and multiplied by 60 is not less than the lesser of–
          (I) 25 percent of the debtor's nonpriority unsecured claims in the case, or $7,475,
21   whichever is greater; or–
          (II) $12,475.
22

23       [3]Section 707(b)(3) provides in pertinent part:

24
     (3) In considering under paragraph (1) whether the granting of relief would be an abuse of
25   the provisions of this chapter in a case in which the presumption in paragraph (2)(A)(i)
     does not arise or is rebutted, the court shall consider–
26        (A) whether the debtor filed the petition in bad faith; or
          (B) *the totality of the circumstances* . . . of the debtor's financial situation
27   demonstrates abuse.  (Emphasis added.)

28

                                                5

§ 707(b).[4]  *In re Price*, 353 F.3d 1135, 1139-40 (9th Cir. 2004).  Because Congress retained the phrase "totality of the circumstances" in BAPCPA, the court may look to pre-BAPCPA case law to construe the meaning of that phrase under § 707(b)(3).

In either case, the amount of monthly disposable income available to pay the unsecured creditors is a function of the debtor's current monthly income[5] reduced by the "applicable monthly expense amounts specified under the National Standards and Local Standards . . . issued by the Internal Revenue Service . . . ." § 707(b)(2)(A)(ii)(I) (the "IRS Standards").

**The BAP's _Luedtke_ Decision.**  In *In re Luedtke*, the chapter 13 means test showed that the debtors' monthly income exceeded the State of Montana's median income which made the debtors "above-median-income."  From the current monthly income, the debtors were entitled to deduct "amounts reasonably necessary . . . for the maintenance or support of the debtor or a dependent . . . ." § 1325(b)(2)(A)(i).  For above-median-income debtors, the term "amounts reasonably necessary for maintenance or support" is determined with specific reference to § 707(b)(2), subparagraphs (A) and (B). § 1325(b)(3).  Section 707(b)(2)(A) allows a debtor to claim living expenses based, *inter alia*, on the IRS Standards.  Initially, the bankruptcy court overruled the trustee's objection and confirmed the plan.  However, the BAP reversed and remanded the case.

The trustee objected to Luedtke's deduction of the older-vehicle operating expense because there is no provision for that expense in the IRS Standards.  The older-vehicle

---

[4]Prior to BAPCPA, the court was required to find "substantial abuse" based solely on the "totality of the circumstances" test.  The Code also fixed a presumption against abuse in favor of the debtor.  With the enactment of BAPCPA, the term "substantial" was deleted from the statute. BAPCPA also dropped the presumption in favor of the debtor.  Because BAPCPA lowered the "abuse" standard, the former "substantial abuse" factors are still relevant to the new "abuse" inquiry.

[5]The term "current monthly income" is defined in § 101(10A) to mean in pertinent part: "the average monthly income from all sources that the debtor [and debtor's spouse] receives . . . without regard to whether such income is taxable income, derived during the [prior] 6-month period . . . ."

expense is provided for in chapter 8, part 5 of the IRS's Internal Revenue Manual (the "IRM").[6] The IRM is used by IRS tax collectors when they are considering a taxpayer's offer to compromise an outstanding tax liability. In disallowing the older-vehicle expense, the BAP looked to the plain meaning of the language in § 707(b)(2)(A)(ii)(I) which dictates that the allowable expenses must be found in the IRS Standards.

Nowhere in the applicable IRS materials is the IRM's older-vehicle expense incorporated or even referenced as an allowable expense. The court held that since, "§ 707(b)(2)(A)(ii)(I) focuses exclusively on the [IRS Standards]. . . . [A]nything beyond those standards, and the IRS's interpretation of those standards, is at odds with the Bankruptcy Code." *In re Luedtke*, 508 B.R. at 414 (footnote omitted).

**This Case is Presumptively an Abuse of Chapter 7 Under § 707(b)(2).** The chapter 7 presumption of abuse arises by operation of law if the debtor's monthly disposable income exceeds about $208 ($12,475 ÷ 60). The Debtors admit in their Means Test that they have disposable income of at least $91.44 even after claiming deductions totaling almost $1,316 for the Toy Hauler loan and their older-vehicles. To trigger the "presumption of abuse," the court only needs to find that the Debtors actually have approximately $117 more monthly disposable income than that stated in the Means Test.

The Bankruptcy Code requires the court to determine a chapter 7 debtor's monthly disposable income based on "applicable monthly expense amounts" defined by essentially the same statute, § 707(b)(2)(A)(ii)(I), and the same IRS Standards that apply in chapter 13. The Debtors argue in their supplemental brief in favor of allowing the older-vehicle deduction because the purpose of the Means Test in chapter 7 is different than its purpose in chapter 13. However, the BAP's analysis in *Luedtke* had nothing to do with the purpose of the means test or the fact that the Luedtkes had opted to file a chapter 13. The BAP looked to the Bankruptcy Code and the IRS Standards to determine whether those

---

[6]IRS § 5.8.5.22.3 (2013) provides in pertinent part, that when the taxpayer owns an automobile that is over six years old and has more than $75,000, "an additional monthly operating expense of $200 will generally be allowed. . . ." *In re Luedtke*, 508 B.R. at 410.

1  Standards permit a $200 older-vehicle operating expense deduction. Since the governing

2  statutes in chapter 7 and chapter 13 both look to the same IRS Standards, the court can

3  find no factual, legal or logical reason why the BAP's analysis of the IRS Standards in

4  *Luedtke* should not also apply to a chapter 7. Without the older-vehicle expense

5  deduction, the Debtors' monthly disposable income increases to $491.44, which exceeds

6  the "presumption of abuse" threshold.

7       **The Case is an Abuse of Chapter 7 Based on the Totality of the**

8  **Circumstances.**    The UST also contends that the case should be dismissed based on the

9  "totality of the circumstances of the Debtors' financial situation" pursuant to

10  § 707(b)(3)(B). Subsections' 707(b)(2) and (b)(3) are mutually exclusive. Even if the

11  court concludes that the Debtors pass the Means Test without creating a presumption of

12  abuse, it is inconsequential if the case is otherwise "abusive" under § 707(b)(3). *See In re*

13  *Paret*, 347 B.R. 12 (Bankr. D. Del. 2006) (the term "shall" in § 707(b)(3) "explicitly

14  mandates" consideration of the totality of the circumstances to determine whether abuse

15  exists if the presumption of abuse under § 707(b)(2) does not arise or is rebutted); *see*

16  *also* Eugene R. Wedoff, *Means Testing in the New § 707(B)*, 79 Am. Bankr. L.J. 231, 236

17  (2005) ("[B]ecause the general abuse provisions of § 707(b)(3) expressly apply when the

18  means test has been rebutted, 'passing' the means test does not preclude a discretionary

19  finding of abuse by the court. . . . [I]f a debtor's overall financial circumstances would

20  easily allow the debtor to repay debts . . . the court may find abuse.").

21       When making the "totality of the circumstances" analysis, the court looks first to

22  the question, do the Debtors have the ability to pay a substantial portion of their

23  unsecured debts through a chapter 13 plan? *In re Price*, 353 F.3d at 1139-40.[7] The

24  _____

25       [7]In *Price*, the Ninth Circuit prescribed some non-exclusive "totality of the circumstances"
     factors for courts to consider when reviewing a case for "substantial abuse":

26

27       (1) Whether the debtor has a likelihood of sufficient future income to fund a Chapter 11,
         12, or 13 plan which would pay a substantial portion of the unsecured claims;

28  / / /

8

answer to that question necessarily requires the court to look to the law which governs the calculation of "projected disposable income" in a chapter 13. As discussed above, the BAP has ruled in *Luedtke* that the older-vehicle expense deduction is not included in the IRS Standards and does not apply in chapter 13. Added to that, the Debtors will save approximately $916 per month when they surrender the Toy Hauler and stop making payments on that loan. Above-median-income chapter 13 debtors may not claim a means test deduction for loan payments if they surrender the collateral. *Am. Express Bank, FSB v. Smith (In re Smith)*, B.R. 418, 359, 360, 369 (9th Cir. BAP 2009) (items which the debtor intends to surrender are not necessary to his support and maintenance– "The concepts–surrender and necessity– are mutually exclusive of one another"). *Id.* at 369. These two expense deductions alone will put approximately $1,316 per month in the Debtors' pockets (less an allowance for reasonable chapter 13 attorney's fees), money which could be paid to the unsecured creditors in a chapter 13 plan. The Debtors scheduled only about $30,421 of unsecured debts. It is not difficult to see that the Debtors have the apparent ability to pay all or a substantial portion of their unsecured obligations within 60 months through a chapter 13 plan.

The Debtors argue that their income and expenses have changed since the petition was filed, and they ask the court to consider those mitigating circumstances when

---

(2) Whether the debtor's petition was filed as a consequence of illness, disability, unemployment, or some other calamity;

(3) Whether the schedules suggest the debtor obtained cash advancements and consumer goods on credit exceeding his or her ability to repay them;

(4) Whether the debtor's proposed family budget is excessive or extravagant;

(5) Whether the debtor's statement of income and expenses is misrepresentative of the debtor's financial condition; and

(6) Whether the debtor has engaged in eve-of-bankruptcy purchases.

*In re Price*, 353 F.3d at 1139-40.

9

1  determining their ability to fund a chapter 13 plan. Pursuant to the U.S. Supreme Court's

2  decision in *Hamilton v. Lanning*, 560 U.S. 505, 130 S.Ct. 2464, 177 L.Ed.2d 23 (2010),

3  the court has the authority, in unusual cases, to consider "changes in the debtor's income

4  and expenses that are known or virtually certain at the time of confirmation." *Id.* at 524.

5  However, the *Lanning* court actually affirmed the "important role that the statutory

6  [means test] formula for calculating 'disposable income' plays . . ." in the determination

7  of disposable income. Except in unusual cases, "nothing more is required." *Id.* at 519.

8       The chapter 7 "abuse" question should be determined on the face of the pleadings

9  as filed, specifically the chapter 7 Means Test. *Lanning* was a chapter 13 case and any

10 *Lanning* adjustments to projected disposable income must be adjudicated with a chapter

11 13 trustee "at the time of confirmation" of a chapter 13 plan. The chapter 13 trustee

12 would be a necessary party to that process and it is not proper for the court to adjudicate

13 in this chapter 7 what that result might be. If, after conversion to chapter 13, and

14 consideration of any *Lanning* adjustments, the chapter 13 trustee determines that the

15 Debtors do not have any projected disposable income to pay to their unsecured creditors,

16 then the Debtors may move to reconvert this case to chapter 7.

17 **Conclusion.**

18      Based on the foregoing, the court finds and concludes the $200 older-vehicle

19 operating expense deduction is not available to above-median-income chapter 7 debtors

20 for the same reasons which led the BAP to conclude in *Luedtke* that it is not applicable in

21 chapter 13. Based on that adjustment alone, the Debtors' 60-month disposable income

22 exceeds the "presumption of abuse" threshold set forth in § 707(b)(2)(A)(i)(II). The court

23 is also persuaded that the case would be an abuse of chapter 7 based on the apparent

24 amount of money which the Debtors will be able to keep if the disputed deductions are

25 not disallowed, money which gives them the apparent ability to pay all or a substantial

26 / / /

27 / / /

28 / / /

10

amount of their unsecured claims through a chapter 13 plan.  Accordingly, the UST's
motion to dismiss will be conditionally granted.  The case will be dismissed unless the
Debtors voluntarily convert their case to chapter 13 within 14 days from entry of this
ruling.  They may do so without the need for a noticed motion by submitting an ex parte
application and proposed order.  If the case is not so converted, then the UST shall submit
an order dismissing this case.

Dated: October _24_, 2014

W. Richard Lee
United States Bankruptcy Judge

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## Instructions to Clerk of Court
### Service List - Not Part of Order/Judgment

      The Clerk of Court is instructed to send the Order/Judgment or other court generated document transmitted herewith to the parties below.  The Clerk of Court will send the Order via the BNC or, if checked _____, via the U.S. mail.

      Debtor(s), Attorney for the Debtor(s), Bankruptcy Trustee (if appointed in the case), and __X__ Other Persons Specified Below:

Gregory W. Powell, Esq.
Assistant U.S. Trustee
Office of the U.S. Trustee
U.S. Courthouse
2500 Tulare Street, Suite 1401
Fresno, CA 93721